UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GRACE H. MARQUEZ,

                        Petitioner,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,

                        Respondent.

Case No. 4:09-CV-515-CWD

**MEMORANDUM DECISION AND
ORDER**

## INTRODUCTION

Currently pending before the Court for its consideration is the Petition for Review

(Dkt. 1) of the Respondent's denial of social security benefits, filed October 12, 2009, by

Petitioner Grace H. Marquez ("Petitioner"). The Court has reviewed the Petition for

Review and the Answer, the parties' memoranda, and the administrative record ("AR"),

and for the reasons that follow, will remand to the Commissioner with further

instructions.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 15, 2007, alleging a disability onset date of January 1, 2005 due to low back pain, Hepatitis C infection, and arthritis. This application was denied initially and on reconsideration. A hearing was conducted on October 6, 2008, before Administrative Law Judge ("ALJ") G. Alejandro Martinez, who heard testimony from Petitioner and vocational expert Richard Taylor. ALJ Martinez issued a decision finding Petitioner not disabled on January 9, 2009, and Petitioner timely requested review by the Appeals Council, which denied her request for review on June 25, 2009.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the hearing, Petitioner was 45 years of age. Petitioner completed the tenth grade and partially completed the eleventh grade. Petitioner's prior work experience includes work as a restaurant hostess, house manager, laborer, and case aid.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's low back disorder and Hepatitis C severe within

the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments, specifically her Hepatitis C and resultant arthritis and low back disorder, did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a restaurant hostess or house manager. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined, based upon Petitioner's RFC, that she retained the capacity to perform light work with certain restrictions. Even with the erosion to the base of light work, the ALJ found that Petitioner could perform work as a cashier or call out operator, both jobs that exist in significant numbers in the national economy. Therefore, the ALJ found Petitioner not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

# DISCUSSION

Petitioner believes the ALJ erred at steps four and five in assessing Petitioner's RFC and her capacity to perform other work that exists in significant numbers in the national economy. Specifically, Petitioner argued that the ALJ erred by failing to properly evaluate Petitioner's credibility; failing to provide substantial evidence to support his RFC assessment; improperly rejecting Petitioner's treating physician's opinion; and failing to include all of Petitioner's limitations in the hypothetical posed to the vocational expert. Respondent contends that there was substantial evidence in the record for finding Petitioner's statements about the severity and limiting effects of her pain to be not credible, and that the ALJ's RFC assessment and the hypothetical posed to the vocational expert were sufficiently supported by credible evidence in the record. Specifically, the Respondent contends that the ALJ properly rejected Petitioner's treating physician's opinion because there was no objective medical evidence to corroborate his opinion.

## 1. Background

Petitioner contracted Hepatitis C when she was in her early twenties, likely from giving herself tattoos. (AR 300–301.) She worked as a restaurant hostess from November of 2006 until she voluntarily left employment in February of 2007 due to fatigue, back pain, and the resultant inability to complete her shift. (AR 106–124; 292.) Petitioner claims that she was not cleared to return to work without a physician's note, because she continually called in sick due to illness and medical appointments. (AR 124.)

Petitioner's medical history is limited due to her inability to afford medical care.

(AR 294.) She was treated in the emergency room on January 11, 2007, complaining of severe low back pain for the previous three weeks that was radiating down her left side and had worsened. (AR 173.) Upon exam, she presented with a mild antalgic gait, and positive straight leg raise on the left. (AR 173.) An MRI ordered on January 11, 2007, indicated spondylolysis at L5-S1, with grade 1 spondylolisthesis, and spinal stenosis at L5-S1, particularly in the L5-S1 nerve root with mild facet joint hypertrophy. (AR 173, 174.) The MRI showed also a moderate broad-based disc bulge. (AR 174.) She was treated with an epidural steroid injection and pain medications. (AR 173.) After receiving the steroid injection, Petitioner's pain resolved from a level 8 to no pain. (AR 176.) However, Petitioner was seen again in the emergency room on February 16, 2007, suffering from acute burning and radiating low back pain. (AR 164.) Doctors on February 23, 2007, recommended surgery to correct her condition, but Petitioner stated she could not afford the treatment. (AR 162.) Emergency room physicians determined her low back pain was chronic in nature. (AR 162.)

Petitioner sought treatment from the Community Family Clinic ("Clinic") for her fatigue and management of her Hepatitis C beginning on September 5, 2006. (AR 210.) She presented with frequent urination, fatigue, lightheadedness, and joint pain over the previous two to three months. (AR 210.) Upon examination, it was noted that Petitioner had no hearing in her right ear. (AR 238.) Lab reports ordered on November 21, 2006, and December 6, 2006, indicated elevated liver enzymes and high lymph counts, with a resulting diagnosis of Hepatitis C. (AR 207–208.) Also on December 6, 2006, Petitioner

sought treatment for leg cramps increasing in frequency and duration, and low back pain was noted upon physical exam. (AR 204.) She had good lower extremity joint range of motion and muscle strength. The physician's assessment was myalgias and fatigue related to Petitioner's abnormal thyroid study or Hepatitis C. (AR 204.)

On January 23, 2007, Petitioner sought follow up care from the Clinic for left side numbness and a gastroenterology consult. (AR 203.) It was noted at that time that continued treatment for her Hepatitis C would require normalization of her thyroid, which had low TSH and high T4 from previous lab studies. (AR 203.) Petitioner followed up on January 30, 2007. (AR 199.) At that time, physicians were concerned that Petitioner's treatment for Hepatitis C "could cause further hyperthyroidism." (AR 199.) Lab tests from January 30, 2007, indicated normal T4 and TSH levels, but high Reverse T3 and high Thyroxine levels. An ultrasound performed on January 25, 2007, indicated a normal thyroid without enlargement, with hyperthyrodism present. (AR 202.)

On February 2, 2007, Petitioner underwent a liver biopsy. (AR 168.) According to the biopsy report, Petitioner was suffering from chronic Hepatitis C, considered at Stage 2 with increased portal fibrosis and delicate ports to portal septae. (AR 169.)

On April 15, 2006, Petitioner sought emergency room treatment for shortness of breath. (AR 182.) Chest x-rays indicated her heart and lungs were within normal limits. (AR 182.)  However, on July 15, 2007, chest x-rays showed a mildly enlarged heart indicative of mild congestive heart failure. (AR 189.)

Petitioner again sought treatment on November 29, 2007, at the Clinic complaining

of fatigue, pain in her joints including her hips and wrists, and abdominal pain. (AR 188.)

She had discontinued treatment for Hepatitis C. (AR 188.) Lab results from December 27,

2007, were negative for other causes of her fatigue, such as Lupus, West Nile, or

Rheumatoid arthritis (AR 190, 195.) However, previous lab results from November 30,

2007, did show a high sedimentation rate, low white blood cell count, low neutrophils,

high MCH, and other abnormalities. (AR 187.) Therefore, it was determined that the

cause of her joint pain and fatigue was due to Hepatitis C. (AR 188.) A follow-up visit on

December 5, 2007, indicated Petitioner was still complaining of fatigue, hot flashes, pain,

chills and sweats, and presented with a flat affect. (AR 185.) Over the counter pain

medications were reportedly insufficient to relive Petitioner's joint pain. (AR 185.)

On January 8, 2008, Petitioner was referred to Dr. Scoville, a rheumatologist. (AR

262–276.) Petitioner described her pain as having increased, with complaints of lower

back pain for over one year. She described morning stiffness and soreness in her neck,

shoulders, hands, wrists, lower back, and hips. Petitioner described her pain as a level 6

out of 10. Dr. Scoville noted she had been treated for Hepatitis C and was aware of her

hyperthyroidism. Upon physical examination, Dr. Scoville observed a slight antalgic gait

due to low back pain, mild tenderness of her SI joints and associated positive Patrick's

test, tenderness in her thoracic spine and lumbar spine. As for her joint pain, Dr. Scoville

observed slight to mild tenderness diffusely in her hands, wrists, elbows and shoulders.

All joints had full range of motion with mild discomfort, although muscle strength was

noted as below normal. (AR 268–70.) Petitioner had full fist formation and fair grasp with

her hands. (AR 270.) Dr. Scoville noted also Petitioner's abnormal laboratory test results, including Petitioner's high sedimentation rate. (AR 271.) Dr. Scoville's assessment was chronic polyarthritis, malaise, fatigue, and low back pain. Although Dr. Scoville noted no evidence of rheumatoid arthritis, he diagnosed her rheumatic complaints as symptomatic of her Hepatitis C together with her hyperthyroidism. (AR 271.)

Petitioner returned to Dr. Scoville for a follow up on June 26, 2008. (AR 274.) Petitioner reported her symptoms had improved with drug therapy, but had worsened upon running out of her prescription medications. At that visit, Petitioner complained of pain at level 7 out of 10. Petitioner's last visit to Dr. Scoville on October 2, 2008, indicated no real change in Petitioner's complaints of joint soreness in her hands, shoulders, and low back, as well as fatigue. (AR 276–278). However, her range of motion was assessed as "good." (AR 278.) Dr. Scoville assessed that she suffered from chronic polyarthritis related to Hepatitis C. (AR 278.)

On July 14, 2008, Petitioner visited the Clinic for a follow-up visit. On that date, it was noted that she could not afford further treatment for her thyroid condition. (AR 221.) Range of motion in her wrists was noted as limited. (AR 221.) She had experienced weight loss, and was noted as having a fever and chills. (AR 221.)

On October 2, 2008, Dr. Scoville completed a Residual Functional Capacity Questionnaire and a questionnaire concerning whether Petitioner's arthritis met or equaled listing criteria. (AR 262–266.) In Dr. Scoville's opinion, Petitioner suffered from undefined polyarthritis with pain in her hands, shoulders, hips and back that would

"often" interfere with work. (AR 262.) Specifically, Dr. Scoville opined that Petitioner would require excessive and unscheduled breaks depending upon her condition, and would be absent more than four times each month. In addition, Dr. Scoville was of the opinion that Petitioner would only be able to use her hands and fingers for 20% of an 8 hour day. (AR 264.) However, Petitioner could sit for 6 hours and stand for 2 hours each day. (AR 263.) As for meeting the listing criteria under Section 14.09 for inflammatory arthritis, Dr. Scoville noted five out of the six A Criteria were present, along with one B Criteria and three of four D criteria. (AR 266.)

Petitioner was assessed on September 11, 2008, by a physical therapist, Lynn Woodland. (AR 256.) She was referred specifically for an RFC evaluation. The therapist noted that Petitioner complained of fatigue and generalized pain in her muscles and joints, especially in her hands, hips, and shoulders, with pain worse in the mornings. (AR 256.) Upon examination and testing, the therapist found moderate limitations with her lumbar range of motion, and mild to moderate limitations in other joints consistent with Petitioner's complaints of arthritis type pain. (AR 257.) Mr. Woodland completed an RFC Questionnaire on September 11, 2008. (AR 261.) He noted Petitioner's prognosis as "guarded" due to her "rheumatoid arthritis," generalized muscle and joint pain, and fatigue. (AR 258.) In the therapist's opinion, Petitioner's symptoms would "frequently" interfere with attention and concentration, require excessive and unscheduled breaks, and the use of her hands, fingers, and arms would be limited throughout the day. (AR 259–60.) In addition, the therapist did not believe Petitioner was malingering, and she

likely would be absent from work three to four times each month. (AR 260.)

During the hearing before the ALJ, Petitioner testified that her pain and joint stiffness was worse in the morning, thereby making it difficult to complete her morning routine. (AR 295.) Because of her fatigue, Petitioner testified she took frequent naps throughout the day. (AR 295.) Her joint stiffness in her hands caused pain in her fingers such that she had difficulty grasping or lifting objects, fingering a computer keyboard, and doing housework. (AR 296–302.) Petitioner lived with her son, who assisted her with cooking and housework. (AR 298.) Petitioner's testimony was consistent with the disability questionnaire she completed on April 8, 2007, indicating she had difficulty performing normal activities, and left her home only to go to her weekly doctor's appointments and to shop for food. (AR 142–49.)

They hypothetical given to the vocational expert during the hearing included Petitioner's impairments of Hepatitis C and low back disorder with "mild" resultant fatigue and pain. (AR 306.) Given an individual that could alternate sitting and standing throughout the day, walk occasionally, frequently use hands, fingers, fists, wrists, push and pull, with normal grip strength, fine dexterity, and normal manual dexterity in both hands, the vocational expert opined that someone with those limitations could not perform Petitioner's past relevant work, but could perform sedentary unskilled work such as a call out operator, information provider, or order clerk. (AR 308.) However, when the hypothetical included additional limitations such as limitations on using their hands for 20% of the day or less, missing work more than two days each month, or having to take

additional, unscheduled breaks throughout the day, the vocational expert rendered the opinion that such an individual with any one of the above additional limitations would be precluded from all work.

## 2. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v.*

*Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In this matter, the ALJ's negative credibility finding is not supported by substantial evidence. The ALJ relied upon Petitioner's "wide range of activities of daily living," such as household chores, personal care, cooking, laundry, cleaning, and shopping. (AR 19.) The ALJ cited three examples in the record. However, the ALJ selectively quoted and mischaracterized the record, and the records he did cite do not provide support for the ALJ's credibility finding.

Exhibit 4F (AR 237), upon which the ALJ relied, indicated only that Petitioner's sole form of exercise was "house chores," not that Petitioner did them frequently or with any vigor. In fact, Petitioner testified that her son lived with her, he did most of the

chores, she only left her home to visit her doctor once each week or grocery shop with difficulty twice a month, and that it took her a long time to perform chores and self care because she had to "push [her] body" through the fatigue. (*See, e.g.,* AR 237, 268, 295, 296–302, 298, 142–49.) Petitioner's description of her lack of substantial daily activities was consistently reported to disability services in 2007, and to her treating physicians between 2006 and 2008. The mere fact that Petitioner has carried on "certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004.)

The second reason the ALJ proffered for discounting Petitioner's credibility was the lack of medical records from any time since January 1, 2005, despite her claim that she was disabled since January 1, 2005, and had only described back pain since January of 2007. (AR 19.) Therefore, the ALJ concluded Petitioner was not afflicted with her impairments as early as alleged. However, the ALJ ignored Petitioner's diagnosis of chronic Hepatitis C, which Petitioner had been suffering from since 2005, and which caused her to leave employment in February of 2007. The record is replete with evidence that Petitioner sought treatment in September of 2006 for increasing problems related to fatigue, and was ultimately diagnosed with active and chronic Hepatitis C. The ALJ cannot, on the one hand, classify Petitioner's Hepatitis C as "severe" at step two, but ignore the symptoms associated with the condition when assessing Petitioner's credibility.    Finally, the ALJ cited the lack of "objective evidence of [Petitioner's] pain"

as a reason for doubting her credibility. This, too, was error. The ALJ cannot reject a claimant's subjective pain or symptom testimony "simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 n.11 (9th Cir. 2007). Moreover, the record does contain objective evidence, including documentation that Petitioner suffered from a bulging disc, walked with an antalgic gait, and had limitations with her range of motion in her low back. As for her fatigue and polyarthragias, again the record iss replete with medical documentation that Hepatitis C was the cause of these symptoms, as well as medical observation of Petitioner's discomfort, tenderness, and pain upon movement. (*See, e.g.,* AR 271.) While both Petitioner's treating rheumatologist and the examining physical therapist documented full range of motion in Petitioner's joints, the ALJ selectively did not mention that Petitioner experienced pain while doing so, nor did the ALJ consider Petitioner's fatigue as a result of Hepatitis C.

Accordingly, the Court finds the ALJ improperly discounted Petitioner's testimony about the limiting effects of her pain and symptoms. The ALJ did not provide clear and convincing reasons for discounting Petitioner's pain testimony, and his reasons were not supported by substantial evidence in the record.

### 3. Physician testimony

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, more weight is accorded to the opinion of a treating source than to nontreating

physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating

physician's opinion is not contradicted by another doctor, it may be rejected only for

"clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).

If the treating doctor's opinion is contradicted by another doctor, the Commissioner may

not reject the treating physician's opinion without providing "specific and legitimate

reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*,

722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to

greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d

502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is

conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's

opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes

v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support

the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec.

Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support

the physician's opinion include clinical findings from examinations, conflicting medical

opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

*Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871

(9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ need not accept the opinion of any physician if the opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In the instant case, the ALJ failed to give clear and convincing reasons for disregarding treating physician Dr. Scoville's diagnosis. The ALJ rejected Dr. Scoville's opinion because, while the medical evidence contained documentation of Petitioner's subjective complaints of joint pain, "there [was] no objective evidence, to include imaging studies, of arthritis in any of her joints," which the ALJ would have expected to see if Petitioner were indeed suffering from listing level arthritis. (AR 20.)

However, the record does contain objective evidence of Petitioner's arthritis. Dr. Scoville, a rheumatologist,[1] diagnosed Petitioner with "undefined polyarthritis," and observed upon examination that Petitioner suffered pain in her joints. Dr. Scoville specifically noted Petitioner's abnormal laboratory results, especially her high sedimentation rate. Sedimentation rate is an accepted diagnostic tool for the diagnosis of polymyalgia rheumatica, and an extreme elevation is strongly indicative of serious underlying disease. Malcolm L. Brigden, M.D., B.C., CLINICAL UTILITY OF THE ERYTHROCYTE SEDIMENTATION RATE, American Family Physician (Oct. 1, 1999).[2] The test is often used as a diagnostic parameter for rheumatoid arthritis. *Id.* Importantly, Dr. Scoville relied upon Petitioner's rheumatic complaints, diagnosis of Hepatitis C, and her abnormal laboratory results to conclude that Petitioner suffered from rheumatologic symptoms on the basis of her chronic Hepatitis C, but that the absence of synovitis in her joints did not suggest rheumatoid arthritis. Dr. Scoville believed Petitioner's rheumatic complaints met listing level requirements for arthritis. (AR 20.)

The Court finds the ALJ erred in discounting Dr. Scoville's opinion as Petitioner's treating rheumatologist. There was objective evidence in the record, and the lack of imaging studies when Petitioner was expressly found not to be suffering from rheumatoid

---

[1] A specialist's opinion is given greater weight than those of other physicians because it is an "opinion of a specialist about medical issues related to his or her area of specialty." *Benecke v. Barnhart*, 379 F.3d at 594 n.4 (citing 20 C.F.R. § 404.1527(d)(5)).

[2] Found at http://www.aafp.org/afp/991001ap/1443.html, last visited on March 18, 2011, and attached hereto as Appendix 1.

arthritis was an insufficient reason to disregard Dr. Scoville's diagnosis of polyarthritis. Therefore, the ALJ erred in his failure to fully credit Dr. Scoville's opinions about Petitioner's limitations and his opinion that Petitioner met the listing for arthritis.

**4. Petitioner's Residual Functional Capacity**

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Here, the ALJ erred by failing to include all of Petitioner's impairments in the hypothetical posed to the vocational expert. By improperly weighting Dr. Scoville's opinion concerning Petitioner's arthritic complaints and limitations, and specifically Dr. Scoville's opinion that Petitioner would be limited in the use of her arms, hands, and

fingers because of such complaints and would miss more than two days of work each month, the hypothetical posed did not include those impairments. Rather, by discounting Dr. Scoville's opinion, the hypothetical included only "mild" fatigue and pain and the ability to "frequently" use hands, fingers, fists, and wrists. Under such circumstances, the vocational expert opined that Petitioner was capable of sedentary unskilled work such as a cashier or order clerk.

However, when asked if someone afflicted with arthritis who could only use their hands 20% of the day, or less than occasionally, could perform the identified jobs, the vocational expert was of the opinion that such individual would be precluded from performing those occupations. (AR 309.) In addition, Dr. Scoville was of the opinion that Petitioner would miss more than two days of work each month. Petitioner testified also that because of her arthritic symptoms and fatigue, she had difficulty performing her morning routine, and would likely be late to work consistently. (AR 310.)

By discounting Dr. Scoville's opinion, the ALJ failed to include these limitations in the hypothetical to the vocational expert, and committed error.[3]

## CONCLUSION

Based upon the foregoing review of the record, the ALJ's reasons for finding

---

[3] Petitioner complained also that the ALJ improperly rejected Petitioner's hearing impairment. However, only one treatment note on September 5, 2006, mentioned Petitioner's lack of hearing in her right ear, with no other physician or medical care provider mentioning any subjective complaints related to Petitioner's hearing impairment. (AR 237–238.) No objective evidence appeared in the record to document Petitioner's hearing loss. Because the Court determines that it was error to not fully credit Dr. Scoville's opinion, with the result that the hypothetical did not include all of Petitioner's impairments supported by the record, the Court does not reach the issue of Petitioner's hearing impairment on appeal.

Petitioner to be not fully credible and for according Petitioner's treating rheumatologist's

opinion little weight are not supported by substantial evidence in the record as a whole.

As a result, the hypothetical posed to the vocational expert did not include all of

Petitioner's limitations. Therefore, the ALJ's conclusion that Petitioner is not disabled is

the product of legal error and will be remanded.[4]

---

[4] Petitioner simultaneously argues that the rejection of Petitioner's testimony requires remand with an order for benefits, and that the matter should be reversed and remanded for further consideration. An award of benefits may be directed if "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Reddick*, 157 F.3d at 728, or where, taking Petitioner's testimony as true, the ALJ would be required to award benefits, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1051 (9th Cir. 2007.) In this case, it is not clear that, taking Petitioner's subjective complaints as true, Petitioner would be disabled or that Petitioner's treating physicians considered her to be disabled. No physician rendered an opinion on the ultimate question of disability, and the ALJ did not appropriately consider Dr. Scoville's opinion that Petitioner suffered from listing level arthritis. Therefore, a remand for further proceedings is appropriate.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)     This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)     This Remand shall be considered a "sentence four remand," consistent with

42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir.

2002).

DATED: March 22, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge